**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | Case No. 16 B 1529 |
| | ) | |
| MARIE A. CAHILL, | ) | Chapter 7 |
| | ) | |
| Debtor. | ) | Judge David D. Cleary |

**MEMORANDUM OPINION**

This matter comes before the court on the motion of Surgery Partners, Inc. ("Surgery Partners") for entry of an order compelling the chapter 7 Trustee ("Trustee") to comply with his duties under 11 U.S.C. § 704(a) ("Motion to Compel"). The Trustee filed an objection to the Motion to Compel ("Objection"), and Debtor Marie A. Cahill ("Debtor") filed a response in opposition. Surgery Partners filed a reply ("Reply"). Having reviewed the papers and heard the arguments of the parties, the court will: (1) grant the Motion to Compel to the extent Surgery Partners seeks to compel the Trustee to provide information regarding certain litigation; (2) deny the Motion to Compel to the extent it seeks a determination that Trustee's special counsel has a conflict that was not properly disclosed at the time the court approved its employment; and (3) deny the Motion to Compel to the extent Surgery Partners seeks a finding that this is a surplus estate.

## I. BACKGROUND

Debtor filed for relief under chapter 7 of the Bankruptcy Code on January 19, 2016. Among other items in her schedules, Debtor stated that: (1) the value of her household goods and furnishings is $2,700; (2) she made payments totaling more than $600 to U.S. Bank Home Mortgage and to Michael J. Marcuccilli within 90 days of her petition date; (3) she did not transfer any property within two years of filing for relief under the Bankruptcy Code; and (4) she

did not give any gifts with a value of more than $600 within two years of the petition date. *See* EOD 1, pp. 11, 35-38.

On February 18, 2016, the Trustee conducted the meeting of creditors under 11 U.S.C. § 341(a). He adjourned the meeting to March 1, 2016. *See* EOD 10. The same day as the continued meeting, Debtor amended her schedules and Statement of Financial Affairs to provide: (1) the value of her household goods and furnishings "including antique furniture Debtor uses in home" was $15,000 rather than $2,700; (2) in addition to U.S. Bank and Marcuccilli, Debtor made payments of $1,500 each to Wendy R. Morgan and Lester Barclay; (3) she signed a disclaimer of inheritance rights on March 17, 2015; and (4) she gave her daughter, Katrina Bellocchio ("Bellocchio"), a 1.12 karat diamond ring on April 18, 2013. *See* EOD 12 and 13.

On March 23, 2016, Debtor amended Schedules A and B for a second time. She reduced the value of her household goods and furnishings from $15,000 to $5,565 and attached an appraisal supporting the new valuation dated as of March 20, 2016. *See* EOD 16. A few weeks later, the Trustee adjourned the 341 meeting to April 21, 2016. *See* EOD 17.

On April 18, 2016, the Trustee filed a motion to extend time to object to Debtor's exemptions and discharge (the "First Extension Motion"). *See* EOD 19. He alleged that the "Debtor's ex-boyfriend, who is also the father of two of Debtor's children, appeared at the § 341 meeting, and has since provided the Trustee with evidence of assets in excess of and conflicting with Debtor's testimony. The Trustee is currently investigating these allegations[.]" *Id.*, ¶ 6. The court granted the First Extension Motion. *See* EOD 22.

On May 9, 2016, the Trustee entered an initial report of assets on the case docket. *See* EOD 23. Three weeks later, the Debtor amended her schedules for the third time, modifying her

2

answer to Question 28 on Schedule B and indicating that she expected tax refunds in the amount of $3,938. *See* EOD 26.

The same day Debtor filed her third amended schedules, the Trustee filed an application to retain himself and his law firm (the "Application") in order to pursue "the Debtor's fraudulent transfer of a diamond ring to her daughter, the Debtor's transfer of property to her sister, and the liquidation of Debtor's antique furniture." *See* EOD 27, ¶ 7. He also filed a motion for Rule 2004 examination (the "Rule 2004 Motion") seeking further information regarding the two transfers as well as "the Debtor's pleading in state court on February 19, 2016, claiming she made payments in excess of $250,000 to Wendy Morgan." *See* EOD 28, ¶ 6.

The court approved the Application and granted the Rule 2004 Motion on June 14, 2016. *See* EOD 29 and 31. On the same day the court signed those orders, the Trustee filed a second motion to extend time to object to Debtor's exemptions and discharge (the "Second Extension Motion"). *See* EOD 30. He asked for additional time because he "has not, as yet, received satisfactory answers to his questions about the Debtor's assets, nor has the Debtor complied with his request to turnover an unscheduled diamond ring." *Id.*, ¶ 7. The court granted the Second Extension Motion. *See* EOD 32.

On August 8, 2016, the Trustee filed a complaint against Bellocchio. 16 A 517, EOD 1 (the "Complaint"). In the Complaint, the Trustee alleged that "Debtor transferred the Ring to her daughter as a result of her problematic financial situation and the magnitude of her debts, in order to prevent the Ring from being available to satisfy her creditors' claims." *Id.*, ¶ 16. The Trustee also alleged that, upon information and belief, the diamond ring had an appraised value of $10,000. *See id.*, ¶ 13.

3

A week later, the Trustee filed a third motion to extend time to object to Debtor's exemptions and discharge (the "Third Extension Motion").  *See* EOD 35.  He asserted that he needed additional time to investigate because he was looking into "the true nature of Debtor's assets[.]" *Id.*, ¶ 6.  The court granted the Third Extension Motion.  *See* EOD 39.

On August 22, 2016, the Debtor filed a motion to compel abandonment (the "Abandonment Motion"), alleging that her household goods and furnishings had minimal value to the estate, and that pursuit of the assets would be burdensome and of inconsequential benefit to the estate.  She asked the court to compel the Trustee to abandon the estate's interest in her furniture and household items.  *See* EOD 37.  That same day, Debtor also filed a motion seeking authority to submit restricted documents (the "Restricted Motion"), stating that she held an asset that had been unknown on the petition date.  "Because of the nature of the asset, the Debtor is unable to disclose [it] … in a public filing.  In fact, the Debtor is not able to disclose the asset, even to the Trustee."  EOD 36, ¶ 2.  She sought leave to file an amended Schedule B as a "restricted document" pursuant to Local Bankruptcy Rule 5005-4.[1]  *Id.*, ¶ 3.

At the court hearing on August 30, 2016, the Debtor withdrew the Restricted Motion.  *See* EOD 40. The court continued the Abandonment Motion to November 15, 2016.

On September 6, 2016, the Debtor amended her schedules for the fourth time.  She added to Schedule B a "[p]otential claim against third party" with an unknown value.  *See* EOD 42, p. 5.  The Trustee eventually filed litigation based on this potential claim (the "Qui Tam Action").

The Trustee filed his first Individual Estate Property Record and Report on October 8, 2016 (the "2016 Report").  *See* EOD 44.  He estimated the gross value of the remaining assets in the estate to be $57,558.75.  In the 2016 Report, the Trustee wrote:

---

[1] Local Bankruptcy Rule ("LBR") 5005-3A was added and LBR 5005-4 amended effective June 10, 2020, to create a new procedure for filing sealed and redacted documents.

> Debtor has generally been evasive and untruthful/incomplete in her disclosures to the Trustee. Trustee has reason to believe she has hidden assets …. The Trustee continues to investigate these hidden assets. To date, the Trustee has received Debtor's 2015 state and federal tax refunds. He will demand the turnover of the non-exempt funds in Debtor's bank accounts. 2004 examinations to be conducted. Complaint to be filed re: diamond ring.

EOD 44, p. 2.

On October 14, 2016, Trustee filed a fourth motion to extend time to object to exemptions and discharge (the "Fourth Extension Motion"). *See* EOD 47. The court granted the Fourth Extension Motion. *See* EOD 48.

A few days later, Bellocchio filed a paper titled "Motion to Compel Abandonment of Asset." *See* 16 A 517, EOD 10. She asserted that the subject of the Complaint was a diamond, not a ring, and that Debtor had promised to give her the diamond "when I turned eighteen (18) years of age many years ago." *Id.*, ¶ 7. She stated that the Debtor gave it to her in April 2013. *See id.*, ¶ 9. Bellocchio also filed a "response" to the Complaint. *See* 16 A 517, EOD 11. Both filings were done pro se.

On November 9, 2016, the Debtor filed a motion for Rule 2004 examination (the "Debtor Rule 2004 Motion"). She asked the court to authorize the Trustee to conduct a Rule 2004 examination regarding the "potential claim" (which eventually became the Qui Tam Action) on her fourth amended Schedule B. *See* EOD 49.

> The Debtor desires to disclose the details of the claim to the Trustee, but is limited by law in her ability to do so without protecting the confidential nature of the claim…. The Debtor desires to attend a Rule 2004 examination to provide details of the claim, with disclosure of the claim limited by order of this Court. The Debtor has attached a proposed order that would provide for an examination and protect the information regarding the claim.

*Id.*, ¶¶ 3, 5.

The court granted the Debtor Rule 2004 Motion on November 22, 2016, *see* EOD 53, and on the same day also granted the Abandonment Motion, *see* EOD 52.

5

The court entered the Debtor's discharge on January 13, 2017.  *See* EOD 54.  About a week later, on the request of Trustee's counsel, the court dismissed the Complaint against Bellocchio.  *See* 16 A 517, EOD 16.

On March 2, 2017, the Trustee filed an application to retain Hughes Socol Piers Resnick & Dym, Ltd. ("HSPRD" and the "HSPRD Application").  *See* EOD 57.  The HSPRD Application sought relief under 11 U.S.C. §§ 327(a) and (d) and 328(a) in connection with the Qui Tam Action, although at that time the nature of the claim had not been disclosed publicly. Matthew J. Piers, a shareholder in HSPRD, submitted an affidavit in support of the HSPRD Application ("Piers Affidavit").  *See id.*

The Trustee stated that, other than as discussed in the HSPRD Application or in the Piers Affidavit, HSPRD and its professionals did not hold or represent any interest adverse to the interest of the Debtor's estate or class of creditors by reason of any relationship with the Debtor, are "disinterested persons" as defined in the Bankruptcy Code and did not have any connection with Debtor.  *See id.*, ¶¶ 16-17.

HSPRD entered into an engagement letter with both the Trustee and the Debtor.  *See* EOD 60.  HSPRD's compensation for its representation of the Trustee and the Debtor is 45%-50% of the recovery from the Qui Tam Action, and in certain circumstances HSPRD will be compensated at an hourly rate.  *See id.*, ¶ 5.  The court approved the HSPRD Application on April 13, 2017.  *See* EOD 63.

On April 26, 2017, the Trustee filed the Qui Tam Action under seal in the Circuit Court of Cook County, alleging that Surgery Partners and three other defendants violated the Illinois Insurance Claims Fraud Prevention Act, 740 ILCS 92/1 *et seq.,* by submitting false claims to a private vision insurance company.  The Trustee filed the complaint on behalf of the State of

6

Illinois.  The complaint contains allegations based on the Debtor's previous employment as the practice manager of a vision clinic in suburban Chicago.  The State of Illinois has declined to intervene in the Qui Tam Action and as a result, it has been pursued solely by the Trustee, represented by HSPRD.  The complaint was unsealed and served on the defendants in July 2017.

The Circuit Court granted defendants' motion to dismiss for lack of standing in 2018.  In 2019, the Illinois Appellate Court reversed the dismissal, and in 2020 the Illinois Supreme Court affirmed the appellate decision.  The case was then remanded to the Circuit Court for further proceedings, where it remains pending.  *See* Objection, Ex. A.

Between April 2017, when the court approved the HSPRD Application, and February 2022, the only matters on the docket in this bankruptcy case have been the Trustee's annual reports and an order reassigning the case from Judge Pamela S. Hollis to the undersigned.  In each report, the Trustee estimated that the gross value of the Qui Tam Action is $25,000.  *See* EOD 64-67, 69 and 70.

The claims register in this case contains five creditors holding claims in the aggregate amount of $102,962.81.  On January 14, 2022, Surgery Partners acquired Claim No. 5-1 in the amount of $15,289.01.  *See* EOD 71.

According to Surgery Partners, it offered to acquire the Qui Tam Action from the Trustee for cash in an amount equal to all allowed claims against the Debtor's estate, including professional fees, less any cash or other property held by the estate that is available to pay allowed claims.  The Trustee rejected the offer.  *See* Motion to Compel, ¶ 40.

7

## II.    DISCUSSION

Surgery Partners states that the statutory bases for the relief it seeks are 11 U.S.C. §§ 105(a) and 704.

> The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

11 U.S.C. § 105(a).  Section 704(a) states, in relevant part:

> The trustee shall--
>
> (1) collect and reduce to money the property of the estate for which such trustee serves, and close such estate as expeditiously as is compatible with the best interests of parties in interest;
>
> (2) be accountable for all property received;
>
> (3) ensure that the debtor shall perform his intention as specified in section 521(a)(2)(B) of this title;
>
> (4) investigate the financial affairs of the debtor;
>
> (5) if a purpose would be served, examine proofs of claims and object to the allowance of any claim that is improper;
>
> (6) if advisable, oppose the discharge of the debtor;
>
> (7) unless the court orders otherwise, furnish such information concerning the estate and the estate's administration as is requested by a party in interest[.]

In the section of the Motion to Compel titled "Relief Requested," Surgery Partners asks the court to "enter an order compelling the Trustee to comply with his statutory duties under Bankruptcy Code section 704."  Motion to Compel, ¶ 41.  Similarly, in the prayer for relief, Surgery Partners "respectfully requests that the Court enter an order compelling the Trustee to comply with his statutory duties and granting such other and further relief as may be just and proper."  *Id.*, ¶ 65.  Finally, the Ordered section of the proposed order that Surgery Partners

8

attached to the Motion to Compel provides that "[t]he Chapter 7 Trustee is compelled to comply with his statutory duties under Bankruptcy Code section 704(a), as more specifically provided on the record at the hearing by the Court."

In support of its request to compel the Trustee to act, Surgery Partners contends that "[i]f creditors do not like the job the trustee is doing, they can file a motion to compel him or her to act, or a motion for removal of the trustee (11 U.S.C. § 324). In the context of such a motion, the court can scrutinize the business judgment and litigation zeal (or lack thereof) that is being exercised by the trustee." *Reed v. Cooper (In re Cooper)*, 405 B.R. 801, 812 (Bankr. N.D. Tex. 2009) (denying creditor's request for authority to pursue litigation that trustee declined to prosecute). *See Surf N Sun Apts., Inc. v. Dempsey*, 253 B.R. 490, 494 (M.D. Fla. 1999) ("If a creditor desires the trustee to avoid a particular transfer of the debtor's property, the creditor should voluntarily provide the trustee with all relevant facts and evidence in the creditor's possession and persuade the trustee to take action…. If the trustee exercises his discretion to not pursue the action, the creditor may move the court to compel the trustee to act or, alternatively, seek removal of the trustee for abuse of discretion.").

In *Cooper* and in *Surf N Sun*, the moving creditors sought permission to pursue litigation that belonged to the estate. In the Motion to Compel before this court, however, neither in the prayer for relief nor in its proposed order does Surgery Partners clearly describe what it is asking this court to compel the Trustee to do.

Fed. R. Bankr. P. 9013 requires every motion to "state with particularity the grounds therefor, and … set forth the relief or order sought." The Motion to Compel does not comply with Fed. R. Bankr. P. 9013. *See, e.g., In re Cowan*, No. 05-60028JPK, 2006 WL 2228957, at

9

*1 (Bankr. N.D. Ind. Aug. 3, 2006) ("it is not the Court's function to guess, or derive by inference, the legal basis upon which the Association might premise its request for relief").

At the April 20, 2022, hearing on the Motion to Compel, the court asked Surgery Partners what it sought in terms of relief.

> THE COURT: In your words, what exactly are you asking me to do in the totality of your motion?
>
> MR. AZMAN: Sure, there's a few things your Honor.  There are really three core issues we raise in the motion.  First and foremost is whether there is a surplus estate in this case.  We are asking Your Honor to make a determination as to whether or not this is a surplus estate case…. [A]nd of course, our argument is that there is not [a surplus].  The second item that we're asking Your Honor to consider is whether or not the Trustee's qui tam lawyer with Mr. Piers' firm is conflicted….  We are asking you to find and determine whether or not Mr. Piers' firm is conflicted and thus cannot be retained by the Trustee under section 327(a) or (e).  And third, Your Honor, we are asking you to direct the Trustee to provide our client with information related to some of the issues that we raise in our briefing, including the Trustee's decision to drop litigation[.]

With this clarification that Surgery Partners intended to raise three distinct issues in the Motion to Compel, the court will address each in turn.

### A.  Request to compel the Trustee to provide information regarding the Complaint

Although mentioned last, the first claim for relief the court will analyze is the request that it compel the Trustee to provide information about why he dismissed the Complaint against Debtor's daughter, Bellocchio.

The Background section of this opinion recites the history of this bankruptcy case.  It highlights Debtor's repeated amendment of her schedules as well as the Trustee's numerous requests for extensions of the time to object to the Debtor's exemptions and her discharge.  After concluding the meeting of creditors, the Trustee filed an asset report, noting that the Debtor had been evasive and untruthful.  The Trustee filed the Complaint against Bellocchio, seeking recovery of a diamond ring that the Debtor allegedly transferred.

Surgery Partners asks the court to compel the Trustee to provide information regarding his decision to voluntarily dismiss the Complaint. 11 U.S.C. § 704(a)(7) states that the trustee shall, "unless the court orders otherwise, furnish such information concerning the estate and the estate's administration as is requested by a party in interest[.]"

> As a fiduciary of the estate, the trustee has a duty to provide information to interested parties upon request. This duty is a broad and extensive one. The policy of open inspection, established in the Code itself … is fundamental to the operation of the bankruptcy system and is the best means of avoiding any suggestion of impropriety that might or could be raised.

*In re Pearlstein*, No. 17-32770-THP7, 2022 WL 1492236, at *2 (Bankr. D. Or. May 11, 2022) (footnotes and quotation omitted).

At the hearing on April 20, 2022, the parties disputed whether information had actually been requested. The Trustee argued that "they haven't asked for any, but they did ask about the diamond, so I'll be glad to answer that." He asserted that in his business judgment, the pursuit of the diamond was not economically viable. *See Matter of Taxman Clothing Co.*, 49 F.3d 310, 315 (7th Cir. 1995) ("It should go without saying that neither the trustee in bankruptcy nor the trustee's lawyer has a duty to collect an asset of the debtor's estate if the cost of collection would exceed the value of the asset. His duty is to endeavor to maximize the value of the estate, which is to say the *net* assets. The performance of this duty will sometimes require him to forbear attempting to collect a particular asset, because the costs of collection would exceed the asset's value.") (citations omitted).

Nevertheless, the Trustee agreed to provide the requested information. The court will order the Trustee to do so. If there is a further dispute regarding the furnishing of information, the parties can bring whatever motion they deem appropriate.

**B. Request to Determine Whether HSPRD has a Conflict that Requires Disqualification**

According to the colloquy at the April 20 hearing, Surgery Partners' second request is that the court find that a conflict, which was not disclosed at the time of retention, requires disqualification of HSPRD, the Trustee's special counsel.

Surgery Partners admitted, however, that this request for disqualification is not a request to compel the Trustee to comply with his statutory duties under 11 U.S.C. § 704. It is, instead, a collateral attack on the employment order entered on April 13, 2017.

> THE COURT: With respect to the conflict issue … I don't read your motion to actually ask me to do anything and in fact, aren't you collaterally attacking the retention order and should you not be bringing a motion under that order?
>
> MR. AZMAN: That's fair, Your Honor. The more appropriate process would be for us to file a motion for Your Honor to reconsider the retention order…. I agree with Your Honor, we have not brought that issue properly before you.

To the extent that the Motion to Compel seeks a determination that HSPRD has a conflict that was not properly disclosed at the time the court approved employment, it will be denied.

**C. Request to Determine Whether There is a Surplus Estate in This Case**

**1. Surgery Partners does not ask the court to compel the Trustee to act or to find that the Trustee breached his fiduciary duties**

Surgery Partners explained in court that its third request is for the court to determine whether or not this is a surplus estate case. That is a case in which all creditors are paid in full by the trustee, and "[a]s the last level of distribution, any surplus is distributed to the debtor." 4 Norton Bankr. L. & Prac. 3d § 85:8 (footnote omitted).

In the Motion to Compel and its Reply, Surgery Partners describes the Qui Tam Action in great detail as well as the parameters of its offer to purchase the Qui Tam Action from the Trustee. Surgery Partners asserts that, if the Trustee accepted its offer to purchase the Qui Tam Action, he would be able to pay all claims against the estate. If the Trustee declined the offer

12

and the Qui Tam Action continued to judgment, however, creditors would not be paid in full and there would be no surplus for the Debtor.  Surgery Partners extends this argument to contend that because the Trustee declined its offer, there is no reasonable possibility of a surplus in this case. Therefore, the Trustee owes a fiduciary duty only to creditors, not to the Debtor.  *See Wisdom v. Gugino*, 649 F. App'x 583, 584 (9th Cir. 2016) ("When a debtor retains an interest in estate assets—either by properly claiming exemptions or because surplus property will remain in the estate after all creditors have been compensated—the trustee owes a fiduciary duty to the debtor[.]") (unpublished memorandum).

That extension of its argument, however, is as far as Surgery Partners goes in the Motion to Compel.  It requests a determination that this is not a surplus estate case, but it does not ask the court to compel the Trustee to act.  In fact, Surgery Partners acknowledged at oral argument that "we're not asking Your Honor to force the Trustee to do anything, we're asking Your Honor to make a determination as to whether a surplus estate exists here….  And once Your Honor makes that determination, the Trustee will have to make his own decision in his business judgment[.]"

Nor does Surgery Partners ask the court to find that the Trustee has breached his fiduciary duty, whether by motion or (more appropriately) by adversary proceeding.  "[T]he few cases discussing a trustee's liability for breach of fiduciary duty and breach of his or her statutory duties suggest that a complaint rather than motion procedure must be used." *In re Rollins*, 175 B.R. 69, 73 (Bankr. E.D. Cal. 1994).

2. **Surgery Partners' request that the court determine whether this is a surplus estate case seeks an advisory opinion, therefore the court does not have jurisdiction**

The United States Constitution limits the "judicial Power" of federal courts to "cases" and "controversies." U.S. Const. Art III, § 2, cl. 1. "The exercise of judicial power under Art. III of the Constitution depends on the existence of a case or controversy." *Preiser v. Newkirk*, 422 U.S. 395, 401 (1975). "Determining that a matter before the federal courts is a proper case or controversy under Article III … assumes particular importance in ensuring that the Federal Judiciary respects the proper—and properly limited—role of the courts in a democratic society[.] If a dispute is not a proper case or controversy, the courts have no business deciding it, or expounding the law in the course of doing so." *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 341 (2006) (quotation omitted).

The word "justiciability" is the "term of art employed to give expression to this … limitation placed upon federal courts by the case-and-controversy doctrine." *Flast v. Cohen*, 392 U.S. 83, 95 (1968). *See Shakman v. Dunne*, 829 F.2d 1387, 1393 (7th Cir. 1987). Justiciability encompasses considerations of "ripeness." *Amling v. Harrow Indus. LLC*, 943 F.3d 373, 378 (7th Cir. 2019) ("Ripeness and other justiciability requirements bar a federal court from deciding a question that depends on so many future events that a judicial opinion would be advice about remote contingencies.") (quotation omitted). When ripeness "implicates the possibility of … [a] Court issuing an advisory opinion, [it] is a question of subject matter jurisdiction under the case-or-controversy requirement." *Flying J Inc. v. City of New Haven*, 549 F.3d 538, 544 (7th Cir. 2008) (quotation omitted).

Ripeness involves the distinction between "advisory opinions," which are not permissible, and "declaratory relief," which is. *See Ashcroft v. Mattis*, 431 U.S. 171, 172 (1977) ("For a declaratory judgment to issue, there must be a dispute which calls, not for an advisory

14

opinion upon a hypothetical basis, but for an adjudication of present right upon established facts.") (quotation omitted). Even declaratory relief is "limited—also to avoid transgressing Article III—to cases of actual controversy, that is, actual legal disputes." *Klinger v. Conan Doyle Est., Ltd.*, 755 F.3d 496, 499 (7th Cir. 2014) (quotation omitted).

It is settled that the limits of federal jurisdiction imposed by Article III apply to bankruptcy courts. "This follows naturally from the bankruptcy court's status as a unit of the district court, exercising the district court's bankruptcy jurisdiction. Necessarily, then, a bankruptcy court has no broader jurisdiction than the district court itself." *Bank One, NA v. Knopfler (In re Holstein)*, No. 03 A 638, 2004 WL 26516, at *5 (Bankr. N.D. Ill. Jan. 5, 2004) (citation omitted). *See In re Cassim*, 594 F.3d 432, 437 (6th Cir. 2010) ("Just as this restriction applies to federal district courts, the courts of appeals, and the U.S. Supreme Court, this restriction necessarily applies to federal bankruptcy courts. The ripeness doctrine has developed to ensure that courts decide only existing, substantial controversies, not hypothetical questions or possibilities.") (citation and quotation omitted).

An "advisory opinion" is a decision that does not resolve an actual case or controversy; it is the result of a court answering a question of law not presented by the facts. *See Bank of America, N.A. v. Outboard Marine Corp. (In re Outboard Marine Corp.)*, 304 B.R. 844, 859 (Bankr. N.D. Ill. 2004). If there is no case or controversy, the court has no jurisdiction.

> [A] decision that cannot affect the legal rights of the parties is an impermissible advisory opinion, as are opinions on abstract legal questions. *See, e.g., In re Shondel*, 950 F.2d 1301, 1309 (7th Cir. 1991); *United States v. Peters*, 754 F.2d 753, 757 (7th Cir. 1985) …. [A] dispute must have ripened into a legal case before a federal court can act; the case must not lie merely in the future. *Jones v. Griffith*, 870 F.2d 1363, 1366 (7th Cir. 1989).

15

*Id.*, 304 B.R. at 860 (quotation omitted).  A court's conclusion that a party seeks an advisory opinion does not "change because the parties have moved and briefed the issue before the Court."  *In re Cubic Energy, Inc.*, 587 B.R. 849, 857 (Bankr. D. Del. 2018) (footnote omitted).

The Seventh Circuit cautioned its lower courts that "[f]ederal courts are not authorized to render advice to persons contemplating litigation ….  [T]he case must not lie merely in the future."  *Jones v. Griffith*, 870 F.2d 1363, 1366 (7th Cir. 1989).  But the future is exactly where Surgery Partners' action may lie.  As it admitted in court, Surgery Partners is not asking the court to compel the Trustee to do anything.  It simply would like a determination of whether the estate has a surplus in order to use the answer in its negotiations with the Trustee, or in a subsequent action before the court.  Effectively, Surgery Partners is asking the court to render an advisory opinion on one issue, perhaps one element, of a potential future action.  Thus, it is using the court as a negotiation tool.

Surgery Partners suggests that 11 U.S.C. § 105 supports its request, arguing that the court's ability to make such a determination is in furtherance of an efficient administration of the estate.  This argument misses the mark.  Surgery Partners does not need § 105 to support a request that the court compel the Trustee to act.  It has the right to make that request under § 704, or to bring an adversary proceeding alleging a breach of fiduciary duty, or to seek the Trustee's removal.  It cited these provisions in its papers, even including § 704 in the title of the Motion to Compel.  Yet it admitted in court that it is using none of these options.  *See., e.g., Law v. Siegel*, 571 U.S. 415, 421 (2014) ("It is hornbook law that § 105(a) does not allow the bankruptcy court to override explicit mandates of other sections of the Bankruptcy Code.") (quotation omitted).

Whether the request to determine if this is a surplus estate was presented in its current form for a strategic reason, in an attempt to achieve the best procedural posture for imposing and

16

meeting the required burden of proof, is unclear. *See In re Kmart Corp.*, 359 B.R. 189, 200 (Bankr. N.D. Ill. 2005) ("this court is concerned it is being put in the position of rendering advice to a future court on how to view the relative strengths of the positions of the parties before that court"). However, the court need not – and cannot – determine what the burden is, who possesses the burden or whether a surplus estate exists. Surgery Partners has not pleaded a case or controversy upon which to make such a determination.[2]

Therefore, Surgery Partners' request to determine whether there is a surplus estate in this case will be denied.

### III.    CONCLUSION

For all the reasons stated above, the court will enter an order granting the Motion to Compel to the extent Surgery Partners seeks to compel the Trustee to provide information regarding the Complaint, denying the Motion to Compel to the extent it seeks a determination that HSPRD has a conflict that was not properly disclosed at the time the court approved employment and denying the Motion to Compel to the extent Surgery Partners seeks a finding that this is a surplus estate.

Date:   August 15, 2022

_____
DAVID D. CLEARY
United States Bankruptcy Judge

---

[2] The parties argue over the appropriate standard to apply in determining whether this is a surplus estate, and upon which party the burden falls. Although neither party raised the issue of jurisdiction, the court can and should raise jurisdictional issues. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998) ("This question [of jurisdiction] the court is bound to ask and answer for itself, even when not otherwise suggested, and without respect to the relation of the parties to it.") (quotation omitted); *Kanzelberger v. Kanzelberger*, 782 F.2d 774, 777 (7th Cir. 1986) ("the federal courts are obliged to police the constitutional and statutory limitations on their jurisdiction"). The issue of this court's jurisdiction cannot be waived. *See Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982) ("[N]o action of the parties can confer subject-matter jurisdiction upon a federal court. Thus, the consent of the parties is irrelevant, principles of estoppel do not apply, and a party does not waive the requirement by failing to challenge jurisdiction early in the proceedings.") (citations omitted).